IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ARMAND ANDREOZZI,** | |
| **Petitioner,** | |
| v. | Case No. 3:22-CV-1322-NJR |
| **WARDEN DANIEL SPROUL,** | |
| **Respondent.** | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 filed by Petitioner Armand Andreozzi. (Doc. 1). Andreozzi is a former member of the United States Army who faced two separate court-martial trials in 1998 and was sentenced, respectively, to 27 years and 15 years of confinement. With his habeas petition, Andreozzi challenges the due process afforded during three disciplinary hearings held in 2003 while he was serving his 15-year sentence. For the reasons set forth below, the Court finds that Andreozzi's claims are moot.

### BACKGROUND

At the time Andreozzi filed this habeas petition in 2022, he was serving a 27-year court-martial sentence for rape, sodomy, assault and battery, burglary, kidnapping, and soliciting another to commit an offense. (Doc. 19). The sentence was imposed on June 12, 1998. (*Id.*). Four days after his sentence was imposed, Andreozzi escaped from custody for 22 days. (Doc. 18-4). Upon being captured, Andreozzi faced new charges of desertion, escape from post-trial confinement, larceny, wrongful appropriation, assault on a person

executing law-enforcement duties, assault with a dangerous weapon, kidnapping, and carrying a concealed weapon. (*Id.*). Andreozzi was found guilty at a second court-martial trial and was sentenced to a separate 15-year term of imprisonment on November 13, 1998. (*Id.*). Andreozzi's convictions and sentences were upheld on appeal, and he was dishonorably discharged from the U.S. Army on August 30, 2002. (Doc. 18-5).

Andreozzi began serving his prison terms at the U.S. Disciplinary Barracks ("USDB") at Fort Leavenworth, Kansas. (Docs. 18, 18-5). Army Regulations provide that, where a prisoner is subject to multiple sentences, "the subsequent sentence, upon being ordered into execution, will begin to run as of the date adjudged and will interrupt the running of the prior sentence. After the subsequent sentence has been executed fully the prisoner will resume the service of any unremitted interrupted sentence to confinement." Army Reg. 633-30, para. 4(b) (Feb. 28, 1989). Thus, Andreozzi's initial 27-year sentence was placed on hold when he began serving his subsequent, 15-year sentence. Andreozzi received 1,800 days of Good Conduct Time ("GCT")[1] at the beginning of his 15-year sentence. (Doc. 28).

In January 2006, Andreozzi was transferred from the USDB to the Bureau of Prisons (BOP), U.S. Penitentiary Lewisburg. (Doc. 18-6). Andreozzi completed his 15-year term on December 11, 2008, with no term of parole, and remained in custody to begin his 27-year term. Andreozzi was released from BOP custody on his 27-year sentence in 2023.

---

[1] GCT, or "abatement of sentence for good conduct," is credited to a military inmate at a published rate and is credited to the prisoner "at the beginning of his confinement under sentence with all good conduct time which can be carried during the entire period of his sentence." Army Reg. 633-30, para. 6(a) (Feb. 28, 1989).

(Doc. 43).

In 2003, while still confined at the USDB, Andreozzi received three disciplinary reports related to alleged misconduct that occurred while serving his 15-year sentence. (Doc. 18-1). Disciplinary and Adjustment (D&A) Boards were convened on June 16, 2003, June 18, 2003, and July 7, 2003, to adjudicate the allegations. (*Id.*). D&A Boards are administrative hearings conducted inside the USDB to evaluate alleged prisoner violations of institutional rules and to recommend appropriate discipline. (*Id.*). They are governed by Army and USDB regulations. (*Id.*).

With this habeas action, Andreozzi challenges the procedural due process afforded with regard to each the D&A Boards, as well as the calculation of Earned Time ("ET") from March 21, 2006, to October 31, 2008.[2] Specifically, Andreozzi claims that he was given notice of the June 2003 D&A Boards, but he was denied the opportunity to attend them. While Andreozzi attended the July 2003 D&A Board and gave testimony, he claims the Board President refused to enter any other statements into evidence or call any witnesses. Andreozzi asserts that, as a result of these due process violations, the 150 days of GCT he forfeited because of the D&A Boards should be restored to him, that the records of all three D&A Boards should be expunged from his file, and that his sentenced should be recalculated to award him 157 additional days of ET. (Doc. 1).

## LEGAL STANDARD

A petitioner may bring a petition under 28 U.S.C. § 2241 to challenge the fact or

---

[2] Military inmates in the BOP are awarded an additional five days per month or 60 days per year of ET, as long as they are in a working status. (Doc. 18-12).

duration of the petitioner's confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973). An inmate can challenge the calculation of his sentence, including the application of GCT, in a § 2241 petition. *Setser v. United States*, 566 U.S. 231, 244 (2012); *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983) (where a "disciplinary sanction includes a denial of good-time credits to which the petitioner was entitled as a matter of statute, so that he is indeed seeking release at an earlier date, the suit can be maintained as a habeas corpus suit"). However, an inmate lacks a liberty interest in time credits, such as Earned Time, that have yet to be awarded. *Hadley v. Holmes*, 341 F.3d 661, 665 (7th Cir. 2003) (observing there is no liberty interest, and thus no due process protection, with regard to discretionary good time credits that have yet to be awarded); *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001) (time credits become liberty interests once they have been awarded).

## DISCUSSION

Respondent first argues that the Court need not determine whether Andreozzi's due process rights were violated because his claims are moot. Andreozzi's due process claims relate to the three D&A Boards that occurred during the 15-year sentence Andreozzi completed on December 10, 2008. As a result of those D&A Boards, Andreozzi lost 150 days of GCT that was awarded to him at the beginning of his 15-year term of imprisonment, and he claims he should receive an additional 157 days of ET. Respondent argues that Andreozzi is asking the Court to reopen and amend a sentence that has already been served and is now complete. Furthermore, although Andreozzi was still in custody at the time he filed this habeas petition, that was for a completely separate, 27-year sentence adjudged at a different court-martial. Because there is no live case or

controversy related to the claims raised by Andreozzi, Respondent argues, his petition must be denied as moot.

In reply, Andreozzi asserts this is a live case and controversy for the Court to adjudicate because he is suffering a "concrete and continuing" injury. Therefore, the petition does not fall within the mootness doctrine. Other than providing these conclusory statements, however, Andreozzi provides no factual or legal arguments in support of his position that the case is not moot.

"A petition for a writ of habeas corpus becomes moot after a petitioner is released from custody unless the petitioner will suffer sufficient collateral consequences from the feature of his custody that he is challenging." *Powell v. Galipeau*, 808 F. App'x 386, 387 (7th Cir. 2020) (citing *Spencer v. Kemna*, 523 U.S. 1, 7–14 (1998)). In *Spencer*, the Supreme Court explained that an "incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer*, 523 U.S. at 7. "Once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." *Id.* "Although [courts] presume that a criminal conviction has collateral consequences," that presumption is not extended to prison disciplinary proceedings. *Powell*, 808 F. App'x at 387 (citing *Spencer*, 523 U.S. at 7-8).

Here, Andreozzi has not identified any collateral consequences resulting from the

D&A Boards that exist despite the conclusion of his 15-year sentence more than 17 years ago. Furthermore, Andreozzi was released from his subsequent 27-year prison sentence in 2023. (Doc. 43). Even if Andreozzi is serving a term of supervised release related to his 27-year sentence (which is unknown to this Court), Andreozzi has identified no authority that would allow the Court to credit any GCT to a completely separate sentence. Because expunging the D&A Board records and restoring time credits would confer no benefit upon Andreozzi, the Court finds this case to be moot. *Cf. Pope v. Perdue*, 889 F.3d 410, 414 (7th Cir. 2018) ("When a former inmate still serving a term of supervised release challenges the length or computation of his sentence, his case is not moot so long as he could obtain 'any potential benefit' from a favorable decision."). Having determined the case is moot, the Court need not reach the merits of Andreozzi's petition.

## CONCLUSION

Because all of Andreozzi's claims relating to the calculation of his 15-year sentence, which he completed in 2008, are moot, his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 is **DENIED**.

The Clerk's Office is **DIRECTED** to enter judgment and close this case.

## NOTICE OF APPELLATE RIGHTS

If Andreozzi wishes to appeal this Order, he must file a notice of appeal with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B). If Andreozzi chooses to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008). If Andreozzi files a motion for leave to appeal *in forma*

*pauperis*, he must include in his motion a description of the issues he intends to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). It is not necessary for Andreozzi to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

DATED: October 9, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**